IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| **Laddarion Johnson,** <br> **Plaintiff,** | ) <br> ) <br> ) |
| v. | )   1:22cv893 (LMB/JFA) <br> ) |
| **Tracey Stone, et al.,** <br> **Defendants.** | ) <br> ) <br> ) |

MEMORANDUM OPINION

Defendants Tracey Stone, L.B. Walker, Gloria Robinson, and Deborah Wynn (collectively "defendants") have filed two dispositive motions in this civil rights action filed under 42 U.S.C. § 1983 by Virginia state prisoner Laddarion Johnson ("plaintiff"), who is acting pro se. Specifically, defendants have filed a Motion to Dismiss [Dkt. No. 19] and a Motion for Summary Judgment [Dkt. No. 23], which together address all of the four claims plaintiff has raised in his Complaint. Each Motion was accompanied by a clear Roseboro notice advising plaintiff of his right to respond. [Dkt. Nos. 21, 25]. Plaintiff has filed a single Opposition that addresses defendants' two Motions.[1] [Dkt. No. 26]. Defendants have not filed any reply to plaintiff's Opposition, and the Court therefore considers the pending dispositive motions fully briefed and ready for consideration. For the reasons explained below, the motions will be granted, and this action will be closed.

I. Background

In his Complaint, plaintiff alleges that officials at Baskerville Correctional Center ("Baskerville" or "BCC") violated his right to due process while conducting an annual review of

---

[1] Although plaintiff's Opposition is entitled "Reply to Motion to Dismiss for Failure to State Claims," the document addresses arguments raised in both the Motion to Dismiss and Motion for Summary Judgment. See [Dkt. No. 26].

his security and good conduct time levels. [Dkt. No. 1]. His claims specifically relate to alleged errors that occurred during his annual review in June 2020.[2] Id. Plaintiff asserts that those errors led to a decrease in his ability to earn good time credits and an increase in his security level. Id. The Complaint names four defendants: Counselor Tracey Stone ("Stone"), Chief of Housing Programs Gloria Robinson ("Robinson"), Operations Manager L.B. Walker ("Walker"), and Unit Manager Debra Wynn ("Wynn"), each of whom is employed at BCC, a prison operated by the Virginia Department of Corrections ("VDOC"). [Dkt. No. 1] at 1-3.

The Court construes[3] the Complaint to raise the following claims, all of which relate to plaintiff's 2020 annual review at Baskerville:

1. Defendant Stone violated plaintiff's rights under the Fourteenth Amendment's Due Process Clause by erroneously determining plaintiff's good time and security levels.

2. Defendants Wynn and Robinson violated plaintiff's rights under the Fourteenth Amendment's Due Process Clause by approving defendant Stone's incorrect decisions.

3. Defendant Walker violated plaintiff's rights under the Fourteenth Amendment's Due Process Clause by failing to properly address the grievances plaintiff filed regarding his 2020 annual review.

---

[2] Although the Complaint also includes allegations regarding plaintiff's 2021 annual review, it is clear that plaintiff does not seek relief with respect to that review because he was able to correct errors in the 2021 review through the VDOC's grievance procedure. Moreover, plaintiff has not named Kenyatta Evans, the counselor responsible for conducting his 2021 review, as a defendant in this action and has named the counselor who conducted his 2020 review, Tracey Stone.

[3] The Complaint does not explicitly identify or enumerate these claims, but the Court concludes that the list provides a comprehensive overview of the possible bases for relief identified in the pleading. In his Opposition to defendants' Motions, plaintiff invokes the First, Sixth, and Eighth Amendments, but these sources of law have no logical application to the allegations in the Complaint. Additionally, a plaintiff may not seek to amend his complaint or raise new claims in briefs opposing dispositive motions. See, e.g., Zachair, Ltd. v. Driggs, 965 F. Supp. 741, 748 n.4 (D. Md. 1997) (stating that a plaintiff is "bound by the allegations contained in [his] complaint and cannot, through the use of motion briefs, amend the complaint"), aff'd, 141 F.3d 1162 (4th Cir. 1998). For these reasons, the Court will not address plaintiff's belated First, Sixth, and Eighth Amendment arguments.

2

    4. Defendants Wynn, Robinson, and Walker are liable in their supervisory capacities for the constitutional violations plaintiff suffered.

[Dkt. No. 1].

For these alleged wrongs, plaintiff requests $150,000 in monetary damages and the creation of "an alternative procedure" under which "an outside department / agency [conducts] a second review" of decisions made at VDOC inmates' annual reviews. [Dkt. No. 1] at 8.

## II. Motion to Dismiss

Defendants Walker, Robinson, and Wynn have filed a Motion to Dismiss. [Dkt. No. 19]. Walker argues that the claims against her should be dismissed entirely, and defendants Robinson and Wynn seek dismissal of plaintiff's supervisory liability claims against them. [Dkt No. 20]. In other words, the Motion to Dismiss seeks dismissal of Claims 3 and 4.

### A.    The Complaint's Allegations

Because defendants' Motion to Dismiss seeks dismissal of Claims 3 and 4, only the allegations related to those claims are considered here. In relevant part, the Complaint asserts that, "on or about" June 23, 2020, plaintiff had his annual review at BCC. [Dkt. No. 1] at 5. Counselor Stone conducted the review and, according to plaintiff, made significant mistakes which affected his security level and good time credits. Id. Specifically, plaintiff claims that, although he should have received a Level 2 good time earning rate, he was classified as Level 4 and assigned a higher security level. Id. at 5-6. After Counselor Stone rendered her decision, Unit Manager Wynn and Chief of Housing Programs Robinson reviewed and approved the decision. Id. at 6.

Approximately two years after the review, plaintiff "studied the revised operating procedure 830.3 [and] learned how [an] institutional classification hearing / annual review [is] suppose[d] to go." Id. at 7. Having discovered errors in his 2020 and 2021 annual reviews,

3

plaintiff "start[ed] writing complaints & grievances" to seek a resolution. Id. Although VDOC officials eventually agreed that errors had occurred in plaintiff's 2021 annual review, they denied as untimely the grievance plaintiff filed with respect to his 2020 review. Id.

**B.     Standard of Review**

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure requires a court to consider the sufficiency of a complaint, not to resolve contests surrounding facts or the merits of a claim. Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992). To withstand a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). To do so, the complaint must allege specific facts in support of each element of each claim it raises; "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," do not suffice. Id.

**C.     Analysis**

*1.     Claim 3*

In Claim 3, plaintiff asserts that defendant Walker should be held liable based on her decision to deny as untimely his complaints and grievances related to his 2020 annual review. This claim will be dismissed because the mere denial of an internal complaint or grievance does not support any viable due process claim, as "inmates have no constitutional entitlement or due process interest in access to a grievance procedure." Booker v. S.C. Dep't. of Corr., 855 F.3d 533, 541 (4th Cir. 2017) (citing Adams v. Rice, 40 F.3d 72 (4th Cir. 1994)). Consequently, "any mistakes [defendants] ma[k]e in investigating or ruling on [a] plaintiff's grievances do not rise to the level of a due process violation." Smith v. Jones, No. 1:20cv01157, 2021 WL 4046403, at *4

(E.D. Va. Sept. 3, 2021); see also Christian v. Thomas, No. 3:20cv00804, 2022 WL 1303270, at *11 (E.D. Va. May 2, 2022) ("Because Plaintiff enjoys no constitutional right to participate in grievance proceedings, his allegation that Defendant Reedy improperly responded to his grievance is legally frivolous.").

Plaintiff argues that by denying his grievances, Walker failed to "honor" the "black & white" language of VDOC operating procedures and allowed him to be deprived of his protected liberty interest in good time credits. [Dkt. No. 1] at 7; [Dkt. No. 26] at 1-2. Plaintiff's argument is unfounded because the only potential violation of VDOC operating procedures alleged in the Complaint was defendant Stone's conduct during plaintiff's 2020 annual review, and plaintiff does not allege that Walker participated in making that decision, only that she denied the grievance he filed to challenge it. Even if plaintiff had identified a VDOC operating procedure Walker allegedly violated, such a violation would not amount to a constitutional injury. See Brown v. Angelone, 938 F. Supp. 340, 344 (W.D. Va. 1996) ("[A] state's failure to abide by its own law as to procedural protections is not a federal due process issue.") (citing Riccio v. Cnty. of Fairfax, 907 F.2d 1459, 1469 (4th Cir. 1990)).

For these reasons, Claim 3 will be dismissed.

2. *Claim 4*

In Claim 4, plaintiff seeks to hold defendants Robinson, Wynn, and Walker liable in their supervisory capacities for their failure to correct defendant Stone's alleged mistakes. To state a supervisory liability claim, a complaint must allege facts that demonstrate (1) that the supervisor knew his or her subordinate "was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury;" (2) that the supervisor's response showed "deliberate indifference to or tacit authorization of the alleged offensive practices;" and (3) that there was an "affirmative

5

causal link" between the supervisor's inaction and the constitutional injury suffered by the plaintiff. Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994) (internal quotation marks and citations omitted). With respect to the first element, "[e]stablishing a 'pervasive' and 'unreasonable' risk of harm requires evidence that the conduct is widespread, or at least has been used on several different occasions and that the conduct engaged in by the subordinate poses an unreasonable risk of harm of constitutional injury." Id.

This claim will be dismissed because the Complaint fails to allege facts satisfying the first element of supervisory liability; it does not allege any "pervasive and unreasonable" risk of constitutional injury existed with respect to Baskerville's annual review process. It does not, for example, allege that multiple inmates had been improperly stripped of good time credits. Instead, it merely alleges that defendant Stone, on one occasion, erred when computing plaintiff's good time and security levels. This sole episode is an insufficient basis on which to find the supervisors, defendants Robinson, Wynn, and Walker, liable. See Slakan v. Porter, 737 F.2d 368, 373 (4th Cir. 1984) (opining that, "[o]rdinarily, [a plaintiff] cannot satisfy his burden of proof [as to a supervisory liability claim] by pointing to a single incident or isolated incidents"). Moreover, simply "[r]uling against a prisoner on an administrative complaint does not [automatically] cause or contribute to [a] [constitutional] violation." George v. Smith, 507 F.3d 605, 609 (7th Cir. 2007).

For these reasons, Claim 4 will be dismissed.

### III. Motion for Summary Judgment

Defendants Stone, Robinson, and Wynn have moved for summary judgment on Claims 1 and 2 asserting that plaintiff failed to exhaust administrative remedies before filing this suit. [Dkt. Nos. 23, 24].

A.    **Statement of Undisputed Facts** [4]

The following facts are not in dispute. Plaintiff is a state prisoner in the custody of the VDOC and was incarcerated at BCC from October 23, 2019 through June 6, 2022, when he was transferred to Sussex II State Prison. [Dkt. No. 24-1] at 1, ¶ 4. As a VDOC inmate, plaintiff must follow VDOC Operating Procedures, including Operating Procedure ("OP") 866.1, which outlines the VDOC grievance procedure. Id. at 2, ¶ 5. OP 866.1 provides that all issues that personally affect an inmate are grieveable except those issues pertaining to policies, procedures, and decisions of the Virginia Parole Board; disciplinary hearings; state and federal court decisions; laws and regulations; and matters beyond the control of the VDOC. Id.

Under OP 866.1, an inmate must make a "good faith effort to informally resolve" the issue he faces. Id. at ¶ 8. He may do so by submitting an "Informal Complaint," a "Written Complaint," or a "Verbal Complaint" [5] within fifteen days of the incident or discovery of the incident. Id. at 2-3, ¶ 8. Only after attempting to resolve his complaint informally may an inmate file a "Regular Grievance," which he must do within thirty days of the incident or discovery of the incident. Id. Regular Grievances are stamped and deemed filed on the day they are received in an institution's grievance department. Id. at 3, ¶ 9. Regular Grievances that do not comply with the requirements of OP 866.1 are returned to the inmate within two days of their receipt and with an explanation for the rejection. Id. at ¶ 10. A Regular Grievance may be

---

[4] The Statement of Undisputed Facts consists of information gleaned from the exhibits defendants have submitted in support of their Motion for Summary Judgment as well as the Complaint, which contains a sworn affidavit, and plaintiff's Opposition, which also is sworn.

[5] Different versions of OP 866.1 have used different terms to describe the step inmates must take before filing a Regular Grievance. Compare [Dkt. No. 24-1] at 9-22 (version of OP 866.1 in effect between July 1, 2016 and January 1, 2021, using the term "Informal Complaint") with [Dkt. No. 24-1] at 23-39 (version of OP 866.1 in effect since January 1, 2021, using the terms "Verbal Complaint" and "Written Complaint").

7

rejected if it raises "more than one issue," is filed after the deadline has expired, is duplicative of another grievance, contains insufficient information, or constitutes a mere "request for services." Id. at 3-4, ¶ 10. If a Regular Grievance is rejected, an inmate may request review of the rejection from a Regional Ombudsman, who can overturn the rejection and accept the grievance into the intake process if the reasons for rejection were incorrect. Id. at 4, ¶ 10.

For grievances that are accepted into the intake process, OP 866.1 provides for three levels of review. Level I reviews are conducted by the warden or superintendent of the facility where the inmate is located. Level II reviews are conducted by the Regional Administrator. For most issues, Level II is the final level of review available to an inmate. But for those limited issues appealable to Level III, the Chief of Corrections Operation or Director of the VDOC is responsible for making a final decision. Id. at ¶ 11. Once an inmate has had a Regular Grievance accepted into the intake process and completed the highest available level of appeal, he has fully exhausted the VDOC's grievance procedure. Id. at ¶ 12.

In this action, plaintiff alleges that errors occurred during his June 23, 2020 and June 5, 2021[6] annual reviews, see [Dkt. No. 1]; [Dkt. No. 24-1] at 5, ¶ 14; [Dkt. No. 24-1] at 56, and that he did not learn about the alleged errors until "approx. 2 years" after his 2020 review. [Dkt. No. 1] at 7. Upon discovering that defendants "made multiple errors during [his] 2020 annual review also [his] 2021 annual review," he began the grievance procedure, "start[ing] with [his] 2021 annual review." Id. On January 11, 2022, plaintiff submitted Written Complaint #BACC-22-INF-00016, complaining that during his June 5, 2021 annual review (which assessed plaintiff's record from 2020 through 2021), Counselor Kenyatta Evans miscalculated his good time level.

---

[6] As discussed above, plaintiff's claims deal only with his 2020 review, but details related to his 2021 review and efforts to grieve that issue are relevant to the consideration of defendants' exhaustion defense.

[Dkt. No. 24-1] at 5, ¶ 14. On February 10, 2022, plaintiff submitted a Regular Grievance regarding the same issue. Id. at ¶ 15. Ultimately, plaintiff's Regular Grievance was deemed founded, and Baskerville officials corrected the errors that were made in plaintiff's 2021 review. [Dkt. No. 24-1] at 45.

On May 10, 2022, plaintiff submitted Written Complaint #BACC-22-INF-00166, addressing defendant Stone's allegedly incorrect determinations at his June 23, 2020 annual review (which assessed plaintiff's record from 2019 through 2020). [Dkt. No. 24-1] at 6, ¶ 18; [Dkt. No. 24-1] at 56. A BCC official responded to plaintiff's Complaint the same day, and two days later, plaintiff filed a Regular Grievance regarding the issue. [Dkt. No. 24-1] at 6, ¶ 19; [Dkt. No. 24-1] at 57. On May 16, 2022, plaintiff's Grievance was rejected because it had been filed after the filing period had expired. [Dkt. No. 24-1] at 6-7, ¶ 19; [Dkt. No. 24-1] at 58. Plaintiff appealed this decision to the Regional Ombudsman, who date-stamped the appeal as received on June 17, 2022, which exceeded the five-calendar day period plaintiff had in which to appeal the rejection of his grievance, [Dkt. No. 24-1] at 7, ¶ 19, and for that reason his appeal was denied.

**B.    Standard of Review**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party," and "[a] fact is material if it might affect the outcome of the suit under the governing law." Variety Stores v. Wal-Mart Stores, Inc., 888 F.3d 651, 659 (4th Cir. 2018). Once the moving party has met its burden to show that it is entitled to judgment as a matter of law, the nonmoving party "must show that there is a genuine dispute of material fact for trial …

by offering sufficient proof in the form of admissible evidence." Id. (quoting Guessous v. Fairview Prop. Inv'rs., LLC, 828 F.3d 208, 216 (4th Cir. 2016)). In evaluating a motion for summary judgment, a district court must consider the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences from those facts in favor of that party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962).

C. **Analysis**

Defendants move for summary judgment on the basis that plaintiff failed to exhaust administrative remedies with respect to his complaint about his 2020 annual review. [Dkt. No. 24]. The record supports defendants' argument.

The Prison Litigation Reform Act ("PLRA") states that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); Woodford v. Ngo, 548 U.S. 81, 85 (2006) ("Exhaustion is no longer left to the discretion of the district court, but is mandatory."). The PLRA requires "proper" exhaustion, which demands full "compliance with an agency's deadlines and other critical procedural rules." Woodford, 548 U.S. at 90-91, 93. Indeed, the Fourth Circuit has held that a grievance that does not comply with a prison's procedural requirements does not serve to exhaust the prisoner's administrative remedies. Moore v. Bennette, 517 F.3d 717, 729 (4th Cir. 2008).

In this action, the evidence establishes that plaintiff did not properly exhaust the grievance procedure outlined in OP 866.1 with respect to his complaints about his 2020 annual review. Although plaintiff filed an Informal Complaint and Regular Grievance regarding the

10

issue, the latter of these documents was rejected at intake as untimely, and this rejection was upheld on appeal.

Plaintiff does not appear to contest these facts, instead arguing that BCC officials treated his grievances inconsistently. He points out that his efforts to contest the findings of both his 2020 and 2021 annual reviews were more than thirty days after those reviews occurred, and he therefore questions why only the grievance related to his 2020 review was rejected as untimely. See, e.g., [Dkt. No. 26] at 13 ("[I]f that [was] the case then I shouldn't have been able to grievance [sic] my annual review in the year 2021 because I found the mistakes/errors 8 months later."). Defendants respond that the relevant timeline dictating the acceptance of one grievance and rejection of another was based on plaintiff's *discovery* of the errors in his annual reviews, not the dates of the annual review decisions themselves.

Plaintiff provides the chronology of his administrative complaints in his Complaint, stating that almost "2 years [after his 2020 review]," plaintiff "noticed that [defendants] made multiple errors" in both his 2020 and 2021 annual reviews and "start[ed] writing complaints & grievances on these matters [] start[ing] with [his] 2021 annual review." [Dkt. No. 1] at 7. The record reflects that plaintiff filed a Written Complaint regarding his 2021 review on January 11, 2022. [Dkt. No. 24-1] at 5, ¶ 14. The record further reflects that plaintiff did not file a Regular Grievance regarding his 2020 annual review until May 10, 2022, some four months after plaintiff discovered the problem and sought relief for the errors that occurred in his 2021 review. Id. at 6, ¶ 19. Because OP 866.1 provides that a grievance must be filed within thirty days of the "discovery of the incident," see [Dkt. No. 24-1] at 26, plaintiff's grievance of the 2021 review

11

was timely and his grievance of the 2020 review was untimely according to VDOC procedure.[7] Accordingly, plaintiff did not exhaust his administrative remedies regarding his claims about his 2020 annual review, and defendants are thus entitled to judgment in their favor.

### IV. Conclusion

For the reasons stated above, the defendants' Motion to Dismiss and Motion for Summary Judgment will be granted in an Order that will accompany this Memorandum Opinion.

Entered this 14th day of November 2023.

Alexandria, Virginia

/s/
Leonie M. Brinkema
United States District Judge

---

[7] Even if defendants did violate OP 866.1, which the record does not support, the failure to abide by state procedural rules such as OP 866.1 does not amount to any constitutional violation. See Brown v. Angelone, 938 F. Supp. 340, 344 (W.D. Va. Aug. 9, 1996) ("[A] state's failure to abide by its own law as to procedural protections is not a federal due process issue.") (citing Riccio v. Cnty. of Fairfax, 907 F.2d 1459, 1469 (4th Cir. 1990)).